1

2

3

4

5

6

7

8              IN THE UNITED STATES DISTRICT COURT

9             FOR THE EASTERN DISTRICT OF CALIFORNIA

10   LARRY HARDWICK,

11              Petitioner,              No. CIV S-06-0672 LKK DAD P

12        vs.

13   KEN CLARKE,  et al.,

14              Respondents.             FINDINGS & RECOMMENDATIONS

15   _____/

16              Petitioner is a state prisoner proceeding pro se with a petition for a writ of habeas

17   corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges the decision of the California Board

18   of Parole Hearings (hereinafter "Board") to deny him parole for two years at his seventh parole

19   consideration hearing held on May 10, 2005.  Petitioner claims that the Board's decision violated

20   state law and his federal constitutional rights to due process and equal protection.  He also argues

21   that the California parole statute is unconstitutionally vague and that he was denied parole based

22   on an illegal no-parole policy.  Upon careful consideration of the record and the applicable law,

23   the undersigned will recommend that petitioner's application for habeas corpus relief be granted

24   on petitioner's due process claim and denied in all other respects.

25   /////

26   /////

1

1        PROCEDURAL BACKGROUND

2                Petitioner is confined pursuant to a judgment of conviction entered in the Los

3    Angeles County Superior Court in 1980.  (Answer, Ex. 1.)  At that time petitioner pled guilty to

4    second degree murder, in violation of California Penal Code § 187.  (Id.)  On April 22, 1980,

5    petitioner was sentenced to state prison for a term of fifteen years to life with the possibility of

6    parole.  (Id.)  Petitioner's seventh parole consideration hearing, which is placed at issue by the

7    instant habeas petition, was held on May 10, 2005.  (Answer, Ex. 2.)  On that date, a panel of the

8    Board of Parole Hearings (hereinafter "Board"), then the Board of Prison Terms, found petitioner

9    not suitable for release and denied parole for two years.  (Id.)

10               On October 21, 2005, petitioner filed a petition for a writ of habeas corpus in the

11   Los Angeles County Superior Court, claiming that the Board's failure to find him suitable for

12   parole at his seventh parole suitability hearing violated his federal constitutional rights.  (Answer,

13   Ex. 5.)  The Superior Court rejected petitioner's claims in a reasoned decision on the merits.

14   (Id.)  In denying relief, the Superior Court stated as follows:

15           The Court has read and considered petitioner's Writ of Habeas
             Corpus filed on October 21, 2005.  Having independently reviewed
16           the record, giving deference to the broad discretion of the Board of
             Prison Terms ("Board") in parole matters, the Court concludes that
17           the record contains "some evidence" to support the Board's finding
             that petitioner is unsuitable for parole.  (In re Rosenkrantz (2002)
18           29 Cal.4th 616, 658; see Cal. Code Regs., tit. 15, §2402.)

19           The Board found petitioner unsuitable for parole because the
             commitment offense was especially cruel and callous in that it was
20           dispassionate and calculated and the motive was inexplicable.  The
             Board also found petitioner unsuitable because of his criminal
21           history and unstable social history.

22           Petitioner is serving fifteen years to life for murder in the second
             degree.  The record reflects petitioner entered a restaurant and shot
23           the victim three times in the chest, killing him.  Petitioner told the
             Board he and his cousin had been arguing with the victim and the
24           victim's words were "very disrupted towards us."  "Out of rage" he
             took a gun from his cousin and fired at the victim.  Those facts are
25           "some evidence" the crime was carried out in a "dispassionate and
             calculated manner" (Cal. Code Regs., tit. 15, §2402(c)(1)(B)) and

26   /////

2

that the motive was "inexplicable" (Cal. Code Regs., tit. 15, § 2402(c)(1)(E)).

An inmate may be unsuitable for parole if he had a previous record of violence.  (Cal. Code Regs., tit. 15, § 2402(c)(2).)  The record reflects petitioner had a lengthy criminal history prior to the life crime.  Included in that history is a conviction for assault with a deadly weapon.  Thus, there is "some evidence" petitioner is unsuitable because of a previous record of violence.

An inmate may also be unsuitable for parole if he has a history of "unstable or tumultuous relationships with others."  (Cal. Code Regs., tit. 15, § 2402(c)(3).)  The record reflects at the age of ten petitioner was suspended more than once, from school.  At the age of thirteen petitioner's mother filed an incorrigible petition alleging petitioner refused to follow her direction and stole from family members and neighbors.  He was expelled from school in the seventh grade.  He was declared a ward of the court and placed in a foster home.  He was twenty-one at the time of the life crime and told the Board he "let my cousin talk me into the situation . . ."  All of those facts are "some evidence" petitioner has an unstable social history.

The court rejects the remainder of petitioner's arguments.  In determining parole suitability, the Board's primary concern is the safety of the community.  (In re Dannenberg (2005) 34 Cal.4th 1061.)  The Board will not consider the matrix until it finds petitioner suitable under Penal Code § 3041(b).  (See id. at 1070.)  The record reflects the Board considered petitioner's post conviction gains but still concluded petitioner would pose an unreasonable threat to public safety.  (Penal Code § 3041(b).)  Despite petitioner's contention that his sentence has been converted to life without the possibility of parole, the fact remains he continues to have the *possibility* the Board will find him suitable for parole in the future.

Accordingly, the petition is denied.

(Id.) (emphasis in original).

On January 3, 2006, petitioner filed a habeas petition in the California Court of Appeal for the Second Appellate District, in which he raised the same claims that were contained in his habeas petition filed in the Los Angeles County Superior Court.  (Answer, Ex. 6.)  On January 17, 2006, the California Court of Appeal summarily denied that petition.  (Id.)

/////

/////

1    On January 27, 2006, petitioner filed a habeas petition in the California Supreme

2    Court, raising the same claims that were contained in his petitions for a writ of habeas

3    corpus filed with the Los Angeles County Superior Court and the California Court of Appeal.

4    (Answer, Ex. 7.)  That petition was summarily denied by order filed March 15, 2006.  (Id.)

5                              FACTUAL BACKGROUND

6    The Board described the facts of petitioner's offense, which have not changed

7    over the years, at the May 10, 2005 parole suitability hearing, as follows:

8         On June 25, 1979, at approximately 3:50 a.m. Hardwick entered
          Ernie's Restaurant in Inglewood, California and shot the victim
9         three times in the chest with a revolver.  Hardwick fled the area in
          a vehicle driven by (inaudible) defendant Gary Newsom, that's N-
10        E-W-S-O-M.  The victim died at the scene of the crime.  After a
          lengthy investigation, Hardwick was arrested while incarcerated on
11        another crime.

12   (Answer, Ex.2 at 11-12.)   Petitioner admitted at his parole suitability hearing that he committed

13   the murder.  Petitioner explained that he shot the victim because his cousin told him the victim

14   had done "something" to him.  (Id. at 12.)  Petitioner, his cousin, and the victim were arguing in

15   the parking lot of a restaurant, and petitioner took a handgun from his cousin and shot the victim.

16   (Id.)  Petitioner shot the victim "out of rage" because the victim's words were "very disrupted"

17   towards petitioner and his cousin.  (Id. at 13.)  Petitioner explained to the Board that his cousin

18   talked him "into the situation" and got him involved "in the situation."  (Id. at 14.)  He stated that

19   he was older than his cousin and had always "looked over him."  (Id. at 15.)  At his parole

20   hearing petitioner further stated that he was "young and misled then."  (Id.)  Petitioner was 21-

21   years-old at the time of the crime.  (Id.)

22                                   ANALYSIS

23   I.  Standards of Review Applicable to Habeas Corpus Claims

24        A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of

25   some transgression of federal law binding on the state courts.  See Peltier v. Wright, 15 F.3d 860,

26   861 (9th Cir. 1993); Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing Engle v.

                                        4

1    <u>Isaac</u>, 456 U.S. 107, 119 (1982)).  A federal writ is not available for alleged error in the

2    interpretation or application of state law.  <u>See</u> <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991);

3    <u>Park v. California</u>, 202 F.3d 1146, 1149 (9th Cir. 2000); <u>Middleton</u>, 768 F.2d at 1085.  Habeas

4    corpus cannot be utilized to try state issues <u>de novo</u>.  <u>Milton v. Wainwright</u>, 407 U.S. 371, 377

5    (1972).

6              This action is governed by the Antiterrorism and Effective Death Penalty Act of

7    1996 ("AEDPA").  <u>See</u> <u>Lindh v. Murphy</u>, 521 U.S. 320, 336 (1997); <u>Clark v. Murphy</u>, 331 F.3d

8    1062, 1067 (9th Cir. 2003).  Title 28 U.S.C. § 2254(d) sets forth the following standards for

9    granting habeas corpus relief:

10                     An application for a writ of habeas corpus on behalf of a
               person in custody pursuant to the judgment of a State court shall
11             not be granted with respect to any claim that was adjudicated on
               the merits in State court proceedings unless the adjudication of the
12             claim -

13                     (1) resulted in a decision that was contrary to, or involved
               an unreasonable application of, clearly established Federal law, as
14             determined by the Supreme Court of the United States; or

15                     (2) resulted in a decision that was based on an unreasonable
               determination of the facts in light of the evidence presented in the
16             State court proceeding.

17    <u>See also</u> <u>Penry v. Johnson</u>, 532 U.S. 782, 792-93 (2001); <u>Williams v. Taylor</u>, 529 U.S. 362

18    (2000); <u>Lockhart v. Terhune</u>, 250 F.3d 1223, 1229 (9th Cir. 2001).

19             The court looks to the last reasoned state court decision as the basis for the state

20    court judgment.  <u>Robinson v. Ignacio</u>, 360 F.3d 1044, 1055 (9th Cir. 2004).  Where the state

21    court reaches a decision on the merits but provides no reasoning to support its conclusion, a

22    federal habeas court independently reviews the record to determine whether habeas corpus relief

23    is available under § 2254(d).  <u>Himes v. Thompson</u>, 336 F.3d 848, 853 (9th Cir. 2003); <u>Delgado</u>

24    <u>v. Lewis</u>, 223 F.3d 976, 982 (9th Cir. 2000).  When it is clear that a state court has not reached

25    the merits of a petitioner's claim, or has denied the claim on procedural grounds, the AEDPA's

26    deferential standard does not apply and a federal habeas court must review the claim de novo.

1  Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003); Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th

2  Cir. 2002).

3  II.  Petitioner's Claims

4       A.  Due Process

5           Petitioner claims that the Board's decision finding him unsuitable for parole

6  violates his rights to due process and equal protection.  He argues that there was no evidence

7  before the Board indicating that he poses a "current threat or unreasonable risk to society."  (Pet.

8  at pages 4-5, 7, 12-14 of 77.)  Petitioner also argues that the California regulation which allows

9  the Board to deny a parole date based on the "gravity" of the offense is unconstitutionally vague.

10  (Id. at page 4 of 77; Traverse at 15-25.)  Petitioner further claims that the Board "demonstrates

11  systematic bias or has a policy of underinclusion or anti-parole policy, denying grants of parole to

12  98% of indeterminately sentenced prisoners that come before the Board," in violation of state and

13  federal due process guarantees.  (Pet. at page 4 of 77.)  He argues that his "term has now been

14  turned into Life without the possibility of parole, because he has exited the 2nd degree Universal

15  Term matrix (15 CCR 2403(d)) regulations."  (Id. at page 9 of 77.)  Petitioner states that his term

16  of confinement is in "gross excess of his sentence which violates Federal due process."  (Id. at

17  page 10 of 77.)  Petitioner concludes, "examined in light of the record, the Board's explanation

18  of why petitioner is not suitable for release from prison is revealed as no more than the mouthing

19  of conclusionary words."  (Id. at page 16 of 77.)

20       1.  Due Process in the California Parole Context

21           The Due Process Clause of the Fourteenth Amendment prohibits state action that

22  deprives a person of life, liberty, or property without due process of law.  A litigant alleging a

23  due process violation must first demonstrate that he was deprived of a liberty or property interest

24  protected by the Due Process Clause and then show that the procedures attendant upon the

25  deprivation were not constitutionally sufficient.  Kentucky Dep't of Corrections v. Thompson,

26  490 U.S. 454, 459-60 (1989); McQuillion v. Duncan, 306 F.3d 895, 900 (9th Cir. 2002).

6

A protected liberty interest may arise from either the Due Process Clause of the United States Constitution "by reason of guarantees implicit in the word 'liberty,'" or from "an expectation or interest created by state laws or policies." Wilkinson v. Austin 545 U.S. 209, 221 (2005) (citations omitted). See also Board of Pardons v. Allen, 482 U.S. 369, 373 (1987). The United States Constitution does not, of its own force, create a protected liberty interest in a parole date, even one that has been set. Jago v. Van Curen, 454 U.S. 14, 17-21 (1981). However, "a state's statutory scheme, if it uses mandatory language, 'creates a presumption that parole release will be granted' when or unless certain designated findings are made, and thereby gives rise to a constitutional liberty interest." McQuillion, 306 F.3d at 901 (quoting Greenholtz v. Inmates of Nebraska Penal, 442 U.S. 1, 12 (1979)). California's parole scheme gives rise to a cognizable liberty interest in release on parole, even for prisoners who have not already been granted a parole date. Sass v. Cal. Bd. of Prison Terms, 461 F.3d 1123, 1128 (9th Cir. 2006); Biggs v. Terhune, 334 F.3d 910, 914 (9th Cir. 2003); McQuillion, 306 F.3d at 903; see also In re Lawrence, 44 Cal. 4th 1181, 1204, 1210, 1221 (2008). Accordingly, this court must examine whether the state court's conclusion that California provided the constitutionally required procedural safeguards when it deprived petitioner of a protected liberty interest is contrary to or an unreasonable application of federal law.

Because "parole-related decisions are not part of the criminal prosecution, the full panoply of rights due a defendant in such a proceeding is not constitutionally mandated." Jancsek v. Oregon Bd. of Parole, 833 F.2d 1389, 1390 (9th Cir. 1987) (internal quotations and citation omitted). Where, as here, parole statutes give rise to a protected liberty interest, due process is satisfied in the context of a hearing to set a parole date where a prisoner is afforded notice of the hearing, an opportunity to be heard and, if parole is denied, a statement of the reasons for the denial. Id. at 1390 (quoting Greenholtz, 442 U.S. at 16). See also Morrissey v. Brewer, 408 U.S. 471, 481 (1972) (describing the procedural process due in cases involving parole issues). Violation of state mandated procedures will constitute a due process violation

1   only if the violation causes a fundamentally unfair result.  Estelle, 502 U.S. at 65.

2          In California, the setting of a parole date for a state prisoner is conditioned on a

3   finding of suitability.  Cal. Penal Code § 3041; Cal. Code Regs. tit. 15, §§ 2401 & 2402.  The

4   requirements of due process in the parole suitability setting are satisfied "if some evidence

5   supports the decision."  McQuillion, 306 F.3d at 904 (citing Superintendent v. Hill, 472 U.S.

6   445, 456 (1985)).  See also Powell v. Gomez, 33 F.3d 39, 40 (9th Cir. 1994) (citing Perveler v.

7   Estelle, 974 F.2d 1132, 1134 (9th Cir. 1992)).  For purposes of AEDPA, Hill's "some evidence"

8   standard is "clearly established" federal law.  Sass, 461 F.3d at 1129 (citing Hill, 472 U.S. at

9   456).  "The 'some evidence' standard is minimally stringent," and a decision will be upheld if

10  there is any evidence in the record that could support the conclusion reached by the factfinder.

11  Powell, 33 F.3d at 40 (citing Cato v. Rushen, 824 F.2d 703, 705 (9th Cir. 1987)); Toussaint v.

12  McCarthy, 801 F.2d 1080, 1105 (9th Cir. 1986).  However, "the evidence underlying the board's

13  decision must have some indicia of reliability."  Jancsek, 833 F.2d at 1390.  See also Perveler,

14  974 F.2d at 1134.  Determining whether the "some evidence" standard is satisfied does not

15  require examination of the entire record, independent assessment of the credibility of witnesses,

16  or the weighing of evidence.  Toussaint, 801 F.2d at 1105.  The question is whether there is any

17  reliable evidence in the record that could support the conclusion reached.  Id.

18         When a federal court assesses whether a state parole board's suitability

19  determination was supported by "some evidence" in a habeas case, the analysis "is framed by the

20  statutes and regulations governing parole suitability determinations in the relevant state."  Irons

21  v. Carey, 505 F.3d 846, 851 (9th Cir. 2007)  This court must therefore:

22             look to California law to determine the findings that are necessary
               to deem a prisoner unsuitable for parole, and then must review the
23             record in order to determine whether the state court decision
               holding that these findings were supported by "some evidence" in
24             [petitioner's] case constituted an unreasonable application of the
               "some evidence" principle articulated in Hill.

25

26  Id.

8

1    The state regulation that governs parole suitability findings for life prisoners states

2    as follows with regard to the statutory requirement of California Penal Code § 3041(b):

3    "Regardless of the length of time served, a life prisoner shall be found unsuitable for and denied

4    parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to

5    society if released from prison." Cal. Code Regs. tit. 15, § 2281(a). In California, the overriding

6    concern in determining parole suitability is public safety. In re Dannenberg, 34 Cal. 4th at 1086.

7    This "core determination of 'public safety' . . . involves an assessment of an inmates current

8    dangerousness." In re Lawrence, 44 Cal. 4th at 1205 (emphasis in original). Accordingly,

9            when a court reviews a decision of the Board or the Governor, the
             relevant inquiry is whether some evidence supports the decision of
10           the Board or the Governor that the inmate constitutes a current
             threat to public safety, and not merely whether some evidence
11           confirms the existence of certain factual findings.

12   Id. at 1212 (citing In re Rosenkrantz, 29 Cal. 4th at 658; In re Dannenberg, 34 Cal. 4th at 1071;

13   and In re Lee, 143 Cal. App. 4th 1400, 1408 (2006)).

14           Under California law, prisoners serving indeterminate prison sentences "may

15   serve up to life in prison, but [] become eligible for parole consideration after serving minimum

16   terms of confinement." In re Dannenberg, 34 Cal. 4th at 1078. The Board normally sets a parole

17   release date one year prior to the inmate's minimum eligible parole release date, and does so "in

18   a manner that will provide uniform terms for offenses of similar gravity and magnitude in respect

19   to their threat to the public." In re Lawrence, 44 Cal. 4th at 1202 (citing Cal. Penal Code §

20   3041(a)). A release date must be set "unless [the Board] determines that the gravity of the

21   current convicted offense or offenses, or the timing and gravity of current or past convicted

22   offense or offenses, is such that consideration of the public safety requires a more lengthy period

23   of incarceration . . . and that a parole date, therefore, cannot be fixed . . . ." Cal. Penal Code §

24   3041(b). In determining whether an inmate is suitable for parole, the Board must consider all

25   relevant, reliable information available regarding

26   /////

9

1  the circumstances of the prisoner's social history; past and present
   mental state; past criminal history, including involvement in other
2  criminal misconduct which is reliably documented; the base and
   other commitment offenses, including behavior before, during and
3  after the crime; past and present attitude toward the crime; any
   conditions of treatment or control, including the use of special
4  conditions under which the prisoner may safely be released to the
   community; and any other information which bears on the
5  prisoner's suitability for release.

6  Cal. Code Regs., tit. 15, § 2281(b).

7  The regulation identifies circumstances that tend to show suitability or

8  unsuitability for release.  Id., § 2281(c) & (d).  The following circumstances are identified as

9  tending to show that a prisoner is suitable for release:  the prisoner has no juvenile record of

10  assaulting others or committing crimes with a potential of personal harm to victims; the prisoner

11  has experienced reasonably stable relationships with others; the prisoner has performed acts that

12  tend to indicate the presence of remorse or has given indications that he understands the nature

13  and magnitude of his offense; the prisoner committed his crime as the result of significant stress

14  in his life; the prisoner's criminal behavior resulted from having been victimized by battered

15  women syndrome; the prisoner lacks a significant history of violent crime; the prisoner's present

16  age reduces the probability of recidivism; the prisoner has made realistic plans for release or has

17  developed marketable skills that can be put to use upon release; institutional activities indicate an

18  enhanced ability to function within the law upon release.  Id., § 2281(d).

19  The following circumstances are identified as tending to indicate unsuitability for

20  release:  the prisoner committed the offense in an especially heinous, atrocious, or cruel manner;

21  the prisoner had a previous record of violence; the prisoner has an unstable social history; the

22  prisoner's crime was a sadistic sexual offense; the prisoner had a lengthy history of severe mental

23  problems related to the offense; the prisoner has engaged in serious misconduct in prison.  Id., §

24  2281(c).  Factors to consider in deciding whether the prisoner's offense was committed in an

25  especially heinous, atrocious, or cruel manner include:  multiple victims were attacked, injured,

26  or killed in the same or separate incidents; the offense was carried out in a dispassionate and

1  calculated manner, such as an execution-style murder; the victim was abused, defiled or

2  mutilated during or after the offense; the offense was carried out in a manner that demonstrated

3  an exceptionally callous disregard for human suffering; the motive for the crime is inexplicable

4  or very trivial in relation to the offense.  Id., § 2281(c)(1)(A) - (E).

5         In the end, under current state law as recently clarified by the California Supreme

6  Court,

7         the determination whether an inmate poses a current danger is not
        dependent upon whether his or her commitment offense is more or

8         less egregious than other, similar crimes.  (Dannenberg, supra, 34
        Cal. 4th at pp 1083-84 [parallel citations omitted].)  Nor is it

9         dependent solely upon whether the circumstances of the offense
        exhibit viciousness above the minimum elements required for

10        conviction of that offense.  Rather, the relevant inquiry is whether
        the circumstances of the commitment offense, when considered in

11        light of other facts in the record, are such that they continue to be
        predictive of current dangerousness many years after commission

12        of the offense.  This inquiry is, by necessity and by statutory
        mandate, an individualized one, and cannot be undertaken simply

13        by examining the circumstances of the crime in isolation, without
        consideration of the passage of time or the attendant changes in the

14        inmate's psychological or mental attitude. [citations omitted].

15  In re Lawrence, 44 Cal. 4th at 1221.

16         In addition, in recent years the Ninth Circuit Court of Appeals has concluded that,

17  given the liberty interest that California prisoners have in release on parole, a continued reliance

18  upon an unchanging factor to support a finding of unsuitability for parole over time may

19  constitute a violation of due process.  The court has addressed this issue in three significant

20  cases, each of which will be discussed below.

21         First, in Biggs, the Ninth Circuit Court of Appeals recognized that a continued

22  reliance on an unchanging factor such as the circumstances of the offense could at some point

23  result in a due process violation.  While the court in Biggs rejected several of the reasons given

24  by the Board for finding the petitioner in that case unsuitable for parole, it upheld three:  (1)

25  petitioner's commitment offense involved the murder of a witness; (2) the murder was carried

26  out in a manner exhibiting a callous disregard for the life and suffering of another; and (3)

petitioner could benefit from therapy.  <u>Biggs</u>, 334 F.3d at 913.  However, the court in <u>Biggs</u>

cautioned that continued reliance solely upon the gravity of the offense of conviction and

petitioner's conduct prior to committing that offense in denying parole could, at some point,

violate due process.  In this regard, the court observed:

> As in the present instance, the parole board's sole supportable
> reliance on the gravity of the offense and conduct prior to
> imprisonment to justify denial of parole can be initially justified as
> fulfilling the requirements set forth by state law.  Over time,
> however, should Biggs continue to demonstrate exemplary
> behavior and evidence of rehabilitation, denying him a parole date
> simply because of the nature of Biggs' offense and prior conduct
> would raise serious questions involving his liberty interest in
> parole.

<u>Id.</u> at 916.  The court in <u>Biggs</u> also stated that "[a] continued reliance in the future on an

unchanging factor, the circumstance of the offense and conduct prior to imprisonment, runs

contrary to the rehabilitative goals espoused by the prison system and could result in a due

process violation."  <u>Id.</u> at 917.[1]

    Next, in <u>Sass</u>, the Board found the petitioner unsuitable for parole at his third

suitability hearing based on the gravity of his offenses of conviction in combination with his

prior offenses.  461 F.3d at 1126.  Citing the decision in <u>Biggs</u>, the petitioner in <u>Sass</u> contended

that reliance on these unchanging factors violated due process.  The court disagreed, concluding

that these factors amounted to "some evidence" to support the Board's determination.  <u>Id.</u> at

1129.  The court provided the following explanation for its holding:

> While upholding an unsuitability determination based on these
> same factors, we previously acknowledged that "continued reliance
> in the future on an unchanging factor, the circumstance of the
> offense and conduct prior to imprisonment, runs contrary to the
> rehabilitative goals espoused by the prison system and *could* result
> in a due process violation."  <u>Biggs</u>, 334 F.3d at 917 (emphasis
> added).  Under AEDPA it is not our function to speculate about
> how future parole hearings could proceed.  <u>Cf. id.</u>  The evidence of

---

[1]  The holding in <u>Biggs</u> has been acknowledged as representing the law of the circuit.
<u>Irons v. Carey</u>, 505 F.3d 846, 853 (9th Cir. 2007); <u>Sass v. Cal. Bd. of Prison Terms</u>, 461 F.3d
1123, 1129 (9th Cir. 2006).

Sass' prior offenses and the gravity of his convicted offenses constitute some evidence to support the Board's decision. Consequently, the state court decisions upholding the denials were neither contrary to, nor did they involve an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States.  28 U.S.C. § 2254(d).

Id.

Finally, in <u>Irons</u> the Ninth Circuit sought to harmonize the holdings in <u>Biggs</u> and <u>Sass</u>, stating as follows:

Because the murder Sass committed was less callous and cruel than the one committed by Irons, and because Sass was likewise denied parole in spite of exemplary conduct in prison and evidence of rehabilitation, our decision in <u>Sass</u> precludes us from accepting Iron's due process argument or otherwise affirming the district court's grant of relief.

We note that in all the cases in which we have held that a parole board's decision to deem a prisoner unsuitable for parole solely on the basis of his commitment offense comports with due process, the decision was made before the inmate had served the minimum number of years required by his sentence.  Specifically, in <u>Biggs</u>, <u>Sass</u>, and here, the petitioners had not served the minimum number of years to which they had been sentenced at the time of the challenged parole denial by the Board.  <u>Biggs</u>, 334 F.3d at 912; <u>Sass</u>, 461 F.3d at 1125.  All we held in those cases and all we hold today, therefore, is that, given the particular circumstances of the offenses in these cases, due process was not violated when these prisoners were deemed unsuitable for parole prior to the expiration of their minimum terms.

Furthermore, we note that in <u>Sass</u> and in the case before us there was substantial evidence in the record demonstrating rehabilitation. In both cases, the California Board of Prison Terms appeared to give little or no weight to this evidence in reaching its conclusion that Sass and Irons presently constituted a danger to society and thus were unsuitable for parole.  We hope that the Board will come to recognize that in some cases, indefinite detention based solely on an inmate's commitment offense, regardless of the extent of his rehabilitation, will at some point violate due process, given the liberty interest in parole that flows from the relevant California statutes.  <u>Biggs</u>, 334 F.3d at 917.

/////

/////

/////

13

1   Irons, 505 F.3d at 853-54.[2]

2       2. _Analysis_

3       In addressing the factors it considered in reaching its 2005 decision that petitioner

4   was then unsuitable for release on parole, the Board in this case stated as follows:

5       PRESIDING COMMISSIONER WELCH: Okay, Mr. Hardwick,
    the Panel's reviewed all information received from the public and

6       relied on the following circumstances in concluding that the
    prisoner is not suitable for parole and would pose an unreasonable

7       risk of danger to society if released from prison.  This is going to
    be another two year denial, sir.  One, the offense was carried out in

8       an especially cruel and callous manner.  The victim was shot in a
    public place.  The offense was carried out in a dispassionate and

9       calculated manner.  The offense was carried out in a manner that
    showed a callous disregard for another human being.  The motive

10      for the crime was inexplicable.  The conclusion was drawn from
    the Statement of Facts wherein on June 24, 1979 (inaudible) at

11      Ernie's Restaurant in Inglewood is where (inaudible) three times in
    the chest with a revolver.  The prisoner had an escalating pattern of

12      violent behavior.  He's previously been involved in violent
    situations, he had a record of violent assaultive behavior and

13      escalating pattern of criminal conduct, had a history of unstable
    tremulous [sic] relationships.  He failed previous grants of

14      probation.  He failed to profit from society's previous attempts to
    correct his criminality, that include probation and county jail.

15      Under unstable social history the prisoner's – certainly his lack of
    educational background was an unstable social history.  His

16      behavior in school was an unstable social factor.  His early
    involvement with criminality or becoming incorrigible at the age of

17      10 certainly – unstable kinds of social factors.  The prisoner since
    his last hearing programmed in an acceptable manner.  He's made

18      some progress.  Since his last hearing he have [sic] not received
    any serious disciplinaries.  A recent psychological evaluation still

19      sees the prisoner as an average threat to the community if released.
    However, it shows that he is making – he's made some progress

20      over the years in terms of his dangerousness.  Parole plans.  The

21

22      [2] The California Supreme Court has also acknowledged that the aggravated nature of the
commitment offense, over time, may fail to provide some evidence that the inmate remains a

23  current threat to public safety.  In re Lawrence, 44 Cal. 4th 1181, 1218-20 & n.20 (2008).
Additionally, a recent panel of the Ninth Circuit in Hayward v. Marshall, 512 F.3d 536, 546-47

24  (9th Cir. 2008), determined that under the "unusual circumstances" of that case the unchanging
factor of the gravity of the petitioner's commitment offense did not constitute "some evidence"

25  supporting the governor's decision to reverse a parole grant on the basis that the petitioner would
pose a continuing danger to society.  However, on May 16, 2008, the Court of Appeals decided to

26  rehear that case en banc.  Hayward v. Marshall, 527 F.3d 797 (9th Cir. 2008).  Therefore, the
panel decision in Hayward is no longer citable precedent.

prisoner does have some parole plans.  He appears to have a place to reside.  Certainly we want to commend him for getting a job offer.  That's certainly in his favor.  The hearing Panel notes that in response to Penal Code 3042 Notices the Deputy District Attorney spoke in opposition to a finding of suitability.  The Panel makes the following findings.  The Panel finds that the Prisoner needs to involve himself in positive kinds of programs, the kinds that will enable him to be able to face, discuss, understand and cope with stress in a nondestructive manner.  Until progress is made, the prisoner continues to be unpredictable and a threat to others.  The prisoner has made some gains and he should be commended for the gains that he's made.  No disciplinaries for – major disciplinaries for almost 16 years and that's certainly in his favor and he should be given some accolades for that.  Certainly Breaking Barriers, the Life Skills he participated in, we want to commend him for that.  Did you participate in Breaking Barriers?

INMATE HARDWICK:  (Inaudible).

PRESIDING COMMISSIONER WELCH:  Okay. then I have the wrong note here.  But certainly we want to give you some accolades for – I erred when I said Breaking Barriers.  However, those positive aspects of the prisoner's behavior does [sic] not outweigh the factors of unsuitability.  Parole is denied for two years.  In a separate decision the hearing Panel find [sic] that it's not reasonable to expect that parole would be granted at a hearing during the following two years.  One, the crime was carried out in an especially cruel and callous manner.  The victim was shot in a public place.  The offense was carried out in a manner that demonstrates an exceptionally – disregard for another human being.  The motive for the crime was inexplicable.  The prisoner has an extensive criminality record that started at a very early age.  A recent psychological evaluation shows that the prisoner has made progress.  However, the prisoner has not completed the necessary programming which is essential to his adjustment.  He still needs to participate in self-help programs and other kinds of programs, vocational programs.  The Panel recommends that the prisoner remain disciplinary-free, continue to participate in a valid work program.  The Panel notes that the prisoner have [sic] plateaued out in terms of formal education.  Certainly the Board is not going to hold that against the prisoner.  However, the Panel does note that the prisoner is currently participating in a voc – not in a vocation but in Prison Industries and we encourage him to – I encourage you to talk to your supervisor and ask them if they can validate you as either an apprentice or a journeyman in this job that you're working in and that would certainly go a long ways in terms of a vocational skill if they could give us a letter indicating what level you're at and what kinds of skills you have retained from that area.  And talk to them, they're very good about that.  And that will give you a vocation, so you certainly need to do that.  That concludes the reading of the decision.  The most recent

1    psychological evaluation was completed recently so we're not
     going to request a new psychological evaluation.  Commissioner,
2    you have any comments?

3    DEPUTY COMMISSIONER SMITH:  I don't have any
     comments, but good luck, sir.
4
     PRESIDING COMMISSIONER WELCH:  Good luck to you, sir.
5    Talk to PIA.  That concludes this hearing at 3:14, 1515.  Good luck
     to you.
6

7    (Answer, Ex. 2 at 52-56.)

8           The last reasoned decision rejecting petitioner's due process claim is that of the

9    Los Angeles County Superior Court denying relief with respect to the Board's 2005 decision

10   finding petitioner unsuitable for parole.  The Superior Court found that the Board's reliance on

11   the commitment offense and petitioner's pre-conviction record of violence and unstable social

12   relationships was based on "some evidence" in the record that petitioner constituted a current

13   threat to public safety.  (Answer, Ex. 5.)  For the reasons set forth below, this court concludes

14   that the Superior Court's decision in this regard was an unreasonable application of clearly

15   established federal law.  After taking into consideration the Ninth Circuit decisions in Biggs,

16   Sass, and Irons, this court concludes that petitioner is entitled to federal habeas relief with respect

17   to his due process challenge to the Board's May 10, 2005 decision.

18          In reaching this conclusion the court notes that three of the factors relied on by the

19   Board to find petitioner unsuitable for parole were the unchanging circumstances of petitioner's

20   crime of conviction and his prior criminal and social history.[3]  According to the cases cited

21

22          [3]  The record reflects that when petitioner was 12 or 13 years old, he was declared a ward
     of the court after his mother filed "an incorrigibility petition alleging that [petitioner] refused to
23   follow her directions, stole from family members and neighbors and that he was a problem in
     school."  (Answer, Ex. 4 at page 3 of 9.)  Petitioner was then placed in foster care.  (Id.)
24   Petitioner's adult criminal history, prior to the time that he was incarcerated for the life offense at
     age 21, included "several robberies and burglaries, two arrests for taking a vehicle without the
25   owner's consent, Grand Theft Auto, Reckless Driving, Hit and Run, Assault with a Deadly
     Weapon, possession of marijuana, possession of a controlled substance (PCP) and Discharge of a
26   Firearm in a Public Place."  (Id. at page 5 of 9.)

16

above, these factors can constitute some evidence to support the Board's unsuitability decision

only as long as they are still relevant to a determination of petitioner's current dangerousness.  In

its decision, the Board articulated no nexus, and this court can find none, between the

unchanging circumstances of petitioner's crime of conviction and past criminal and social history

and his dangerousness in 2005.  Thus, this court finds that these static factors alone, when

considered in light of the extensive evidence of petitioner's in-prison rehabilitation, were no

longer predictive of his current dangerousness.

In this regard, the murder of which petitioner was convicted back in 1979 was not

committed in such an especially heinous, atrocious, or cruel manner as to undermine the fact that

petitioner's rehabilitative efforts and performance while in prison demonstrate he no longer

would pose a danger to society if released on parole.  Similarly, petitioner's pre-conviction

history does not continue to be predictive of his current dangerousness when considered in light

of the other factors in the record, all of which indicate that he no longer poses a current danger to

society.  The court notes, in this regard, that petitioner had served approximately 25 years of his

fifteen years-to-life sentence at the time of the 2005 parole suitability hearing.  Petitioner was

then 51 years old.  (Answer, Ex. 2 at 41.)  He had the lowest classification score that a life inmate

can attain in the California prison system.  (Id. at 27.)  This was the seventh time the Board relied

on the circumstances of petitioner's crime of conviction and his prior history to find him

unsuitable for release on parole.  At the time of the parole suitability hearing in 2005, thirty years

had passed since petitioner's unstable social history, his adult criminal history, and the crime for

which he had been sentenced to state prison for a term of fifteen years to life.

Moreover, the Board noted that petitioner had "programmed in an acceptable

manner" and had not received any serious disciplinary convictions in the previous sixteen years

of imprisonment.  (Id. at 53-54.)  The record reflects that petitioner had received "satisfactory" to

"exceptional" reports from all of his prison work supervisors.  (Id. at 29, 47.)  The Board also

noted that petitioner had arranged at least one place to reside and a job offer upon his release,

1   demonstrating that he had solid parole plans.  (Id. at 53.)  Although the Board urged petitioner to

2   talk to his prison job supervisor about becoming a "journeyman" or an "apprentice" in order to

3   upgrade his job prospects upon release, this suggestion appears to ignore the fact that petitioner

4   already had a job offer to commence immediately upon his release from prison.

5          The Board also relied on petitioner's most recent psychological evaluation, noting

6   that he was an "average threat to the community if released."  (Id.)  The state court record reflects

7   that petitioner received an evaluation by a staff psychologist in advance of the 2005 parole

8   suitability hearing.  (Answer, Ex. 4.)  The evaluator's conclusions at that time were as follows:

> Although the inmate appears to have accepted responsibility for his
> crime and expresses genuine remorse for having committed it, he
> does not appear to have a good understanding of the underlying
> psychological factors that led him to commit it.  He has limited self
> awareness and insight, which reflects his rather concrete reasoning
> ability.  Therefore, it is doubtful that the inmate has the capacity to
> improve his self awareness and insight beyond his current level.
> His impulse control has significantly improved with age and
> maturity and no longer appears to be a significant problem for him.
> He also seems to have changed his criminal orientation towards a
> pro-social one, as evidenced by his good work ethic and
> participating in motivational speaking to youth.  He also seems
> relatively content in prison, which may be the result of having been
> raised and lived in institutions for most of his life.  The inmate
> continues to be interested in improving his education and reading
> abilities and it is recommended that he continue to participate in
> any such activities that are available to him.

18   (Id. at pages 7-8 of 9.)  This psychologist rated petitioner's potential for violence as "average

19   both inside and outside a controlled setting."  (Id. at page 7 of 9.)

20          However, a summary of petitioner's prior psychological evaluations reveals that

21   petitioner's violence potential was rated "below average" in all of his other evaluations where the

22   examining psychologist expressed an opinion with regard to petitioner's dangerousness.  For

23   instance, in 2001, Melvin Macomber, Ph.D. opined that petitioner's potential for violence was

24   below average in comparison to other men on parole, that he had significantly changed over the

25   years, and that he did not pose any degree of threat to society if released.  (Id. at pages 6 & 9 of

26   9.)  In 1999, C. Schroeder, Ph.D. concluded that petitioner's potential for violence was below

18

average for parolees if released.  (Id. at page 6 of 9.)  In 1990, G.C. Houghton, Ph.D. concluded that petitioner's violence potential had decreased over the years to the point that it was now below average, and that petitioner's "gains would be expected to be maintained in a less structured environment such as the free community."  (Id. at page 7 of 9.)  It is not clear from the record why petitioner's violence potential was raised from "below average" to "average" in his latest evaluation, especially given the fact that he had not suffered any disciplinary convictions or encountered any other problems in prison in the interim.  Because this sudden upgrade in petitioner's violence potential is unexplained and contrary to petitioner's previous evaluations, this court concludes that the psychological evaluation relied on by the Board lacks "indicia of reliability" and therefore cannot be said to constitute "some evidence" supporting the Board's decision.

The Board also noted that the District Attorney spoke in opposition to petitioner's release. (Answer, Ex. 2 at 54.)  Specifically, a deputy district attorney urged the Board to find petitioner unsuitable for release based on the circumstances of his crime; petitioner's past criminal history; and his disciplinary violations in prison, all of which occurred prior to 1988 (except for a citation in 1991 for "failing to pull up his pants").  (Id. at 46-47; Answer, Ex. 4 at page 6 of 9.)  The deputy district attorney also stated that petitioner's "parole plans are not quite firmed up." (Answer, Ex. 2 at 47.)  As noted above, this latter claim is not supported by the record before this court.  In any event, although opposition to parole by law enforcement is to be considered during the parole process, California Penal Code § 3046(c), "voiced opposition to parole is not an enumerated unsuitability factor . . . and such argument is not evidence of unsuitability."  Saldate v. Adams, 573 F. Supp.2d 1303, 1310 (E.D. Cal. 2008).

Finally, the Board Panel urged petitioner to "involve himself in positive kinds of programs . . . that will enable him to be able to face, discuss, understand and cope with stress in a nondestructive manner."  (Id. at 54.)  During his parole suitability hearing, petitioner stated that he had taken "the psych programs," and "Toastmasters International," and for a year and a half

had been giving motivational speeches to young people about staying out of trouble.  (Id. at 31, 35-36.)  Petitioner's attorney explained at the hearing that petitioner had attempted to get his GED three times and was unable to do so only because he "was a slow reader and couldn't master the language," but not from "lack of trying."  (Id. at 47.)  Petitioner explained that he had taken all educational programs available to him while in prison.  (Id. at 36.)  There is no evidence in this record that petitioner failed to involve himself in prison programs.  Indeed, the opposite is true.

In short, this court finds no evidence in the record indicating that petitioner would pose a current danger to the public if released.  The passage of time has rendered the unchanging factors of petitioner's commitment offense and his prior social and criminal history no longer a valid predictor of his current dangerousness.  See Rosenkrantz v. Marshall, 444 F. Supp.2d 1063, 1084 (C.D. Cal. 2006) ("After nearly twenty years of rehabilitation, the ability to predict a prisoner's future dangerousness based simply on the circumstances of his or her crime is nil").  As explained above, the killing of the victim in this case was not so calculated and heinous as to indicate, without more, that petitioner remains a continuing danger to the public twenty-five years later.  Moreover, it is impressive that during the sixteen years prior to the 2005 parole suitability hearing petitioner had: received no disciplinary write-ups; has effectively participated in rehabilitative programs; all psychological evaluations except the most recent one opine that he no longer represents a danger to public safety if released on parole; has job skills and a job offer if released; and he has supportive family members willing to ease his transition back into society.  Applying the federal due process principles expressed in the cases cited above, this court is compelled to conclude that, in light of the period of time that has elapsed since the commitment crime, the affirmative evidence of petitioner's post-conviction conduct and his rehabilitative efforts, and his stable parole plans, there is no competent evidence to support the Board's finding that petitioner poses a danger to public safety if released on parole.  Under these circumstances, the decision of the Los Angeles County Superior Court denying habeas relief and upholding the

1   Board's 2005 decision to deny petitioner parole violated due process.  Accordingly, petitioner is

2   entitled to federal habeas relief on his claim that the Board's failure to find him suitable for

3   parole at the May 10, 2005, parole suitability hearing violated his right to due process.  Sass, 461

4   F.3d at 1129; Irons, 505 F.3d at 664-65.

5                    B.  Equal Protection

6            Petitioner claims that his right to equal protection was violated when the Board

7   failed to find him suitable for parole.  A petitioner raising an equal protection claim in the parole

8   context must demonstrate that he was treated differently from other similarly situated prisoners

9   and that the Board lacked a rational basis for its decision.  McGinnis v. Royster, 410 U.S. 263,

10  269-70 (1973); McQueary v. Blodgett, 924 F.2d 829, 835 (9th Cir. 1991).  Petitioner has failed to

11  show that any other inmate who was similarly situated to him was granted a parole date.

12  Petitioner has also failed to demonstrate that the Board violated his equal protection rights by

13  applying a different suitability standard to him than that applied to others similarly situated.

14  Accordingly, petitioner is not entitled to relief on his claim that his equal protection rights were

15  violated by the Board's conclusion in 2005 that he was not suitable for parole.

16                   C.  No Parole Policy

17           Petitioner claims that he was denied parole as a result of the Board's application

18  of an "anti-parole policy."  (Pet. at page 4 of 77.)  He argues that this policy violates the intent of

19  the California legislature that parole "shall normally" be granted.  (Id.)

20           The Ninth Circuit Court of Appeal has acknowledged that California inmates have

21  a due process right to parole consideration by neutral decision-makers.  See O'Bremski v. Maass,

22  915 F.2d 418, 422 (9th Cir. 1990) (an inmate is "entitled to have his release date considered by a

23  Board that [is] free from bias or prejudice").  Accordingly, parole board officials owe a duty to

24  potential parolees "to render impartial decisions in cases and controversies that excite strong

25  feelings because the litigant's liberty is at stake."  Id. (quoting Sellars v. Procunier, 641 F.2d

26  1295, 1303 (9th Cir. 1981)).  Indeed, "a fair trial in a fair tribunal is a basic requirement of due

                                            21

1  process." In re Murchison, 349 U.S. 133, 136 (1955).  Petitioner is therefore correct that he was

2  entitled to have his release date considered by a Board that was free of bias or prejudice.

3  However, petitioner has submitted no evidence demonstrating that the Board operated under a

4  no-parole policy or was otherwise biased against him in 2005.  Therefore, he is not entitled to

5  relief on this claim.

6              D.  Unconstitutionally Vague Statute

7              Petitioner also argues that the regulations the Board uses to make its suitability

8  decision contain vague criteria and directly violate his right to due process.  (Traverse at 15-25.)

9  He specifically objects to the phrase "especially heinous, atrocious or cruel," found in Cal. Code

10  Regs. tit. 15, § 2281(c).  (Id)  He also objects to the Board members' use of the terms

11  "particularly egregious," and "inexplicable motive."  (Id.)

12              A statute or regulation is void for vagueness "if it fails to give adequate notice to

13  people of ordinary intelligence concerning the conduct it proscribes or if it invites arbitrary and

14  discriminatory enforcement."  United States v. Doremus, 888 F.2d 630, 634 (9th Cir. 1989).  See

15  also Humanitarian Law Project v. Mukasey, 509 F.3d 1122, 1134 (9th Cir. 2007) ("To survive a

16  vagueness challenge, the statute must be sufficiently clear to put a person of ordinary intelligence

17  on notice that his or her contemplated conduct is unlawful.")  "[A] party challenging the facial

18  validity of [a law] on vagueness grounds outside the domain of the First Amendment must

19  demonstrate that the enactment is impermissibly vague in all of its applications."  Hotel & Motel

20  Ass'n of Oakland v. City of Oakland, 344 F.3d 959, 972 (9th Cir. 2003) (internal quotation marks

21  omitted).  Moreover, "[t]he Due Process Clause does not require the same precision in the

22  drafting of parole release statutes as is required in the drafting of penal laws."  Hess v. Board of

23  Parole and Post-Prison Supervision, 514 F.3d 909, 914 (9th Cir. 2008) (citing Glauner v. Miller,

24  184 F.3d 1053, 1055 (9th Cir. 1999)).

25  /////

26  /////

22

The California parole release statute provides a list of five factors to be considered in determining whether a crime is especially "heinous, atrocious or cruel," including whether the offense was carried out in a dispassionate and calculated manner and whether the motive for the crime is inexplicable or very trivial in relation to the offense. California Code of Regulation Title 15, § 2281(c)(1)(A) - (E). Because the term "especially heinous, atrocious, or cruel" is further limited by these five detailed factors, it is not constitutionally vague. Cf. Arave v. Creech, 507 U.S. 463, 470-78 (1993) (Idaho death penalty statute which cited as an aggravating factor that the crimes were carried out in "utter disregard for human life" was not impermissibly vague because limiting construction had been adopted defining this factor as demonstrating "the utmost disregard for human life, i.e., the cold-blooded pitiless slayer"). Further, California Code of Regulation Title 15, § 2402(c)(1) has not been found to be unduly vague or overbroad under federal law. Nor has clearly established federal law been found to preclude the use of terms such as "especially cruel" or "callous" as guidelines in parole suitability evaluations. Cf. Maynard v. Cartwright, 486 U.S. 356, 363-64 (1988) (in the capital case context, the "especially heinous, atrocious, or cruel" aggravating circumstance was unconstitutionally vague because it did not offer sufficient guidance to the jury in deciding whether to impose the death penalty); Tuilaepa v. California, 512 U.S. 967, 972 (1994) (statutory aggravating circumstances in capital cases "may not be unconstitutionally vague").

For these reasons, petitioner's challenge to California's parole statute on vagueness grounds must fail. The opinion of the Los Angeles County Superior Court rejecting petitioner's vagueness challenge is not contrary to or an unreasonable application of clearly

/////

/////

/////

/////

/////

1 | established federal law.  See 28 U.S.C. § 2254(d)(1).  Accordingly, petitioner is not entitled to

2 | relief on this claim.[4]

3 | CONCLUSION

4 | Accordingly, IT IS HEREBY RECOMMENDED that:

5 | 1.  Petitioner's application for a writ of habeas corpus be granted with respect to

6 | his due process claim and denied in all other respects; and

7 | 2.  Within thirty days from the date of service of any order adopting these findings

8 | and recommendations, the California Board of Parole Hearings calculate a term for petitioner in

9 | accordance with the requirements of California Penal Code § 3041, with credit for time since the

10 | May 10, 2005, decision as if a parole date had been granted at that time, and any other term credit

11 | to which petitioner is entitled by law.

12 | These findings and recommendations are submitted to the United States District

13 | Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-

14 | one days after being served with these findings and recommendations, any party may file written

15 | objections with the court and serve a copy on all parties.  Such a document should be captioned

16 |

17 | [4]  Petitioner presents several additional claims in his traverse.  He alleges that the Board
18 | must consider other offenses of similar gravity in setting a parole term and use state law and
California's matrix system to determine petitioner's "statutory maximum" penalty.  (Traverse at
19 | 25, 30-34).  Petitioner also argues that the Board's continued finding that he is not suitable for
parole has transformed his sentence into one of life without the possibility of parole, in violation
20 | of Apprendi v. New Jersey, 530 U.S. 466 (2000), Blakely v. Washington, 542 U.S. 296 (2004),
and Cunningham v. California, 549 U.S. 270 (2007).  (Id. at 25-29.)  As noted by the Los
21 | Angeles County Superior Court, however, petitioner's sentence has not been changed by the
Board's actions because petitioner is still eligible for parole.  Further, many of petitioner's
22 | arguments based on state law have been rejected by the California Supreme Court in In re
Dannenberg, 34 Cal. 4th at 1084, 1098 (the Board is not required to refer to its sentencing
23 | matrices or to compare other crimes of the same type in deciding whether a prisoner is suitable
for parole).  Nor has petitioner cited any federal authority for the proposition that a Board's
24 | repeated failure to find a prisoner suitable for parole violates the rights recognized in Apprendi,
Blakely, and Cunningham.  Because the decision of the Los Angeles County Superior Court
25 | rejecting these claims is not contrary to or an unreasonable application of federal law, petitioner
is not entitled to habeas relief.  In any event, petitioner is advised that he may not raise new
26 | claims in his traverse.  See Cacoperdo v. Demosthenes, 37 F.3d 504, 507 (9th Cir. 1994) ("A
Traverse is not the proper pleading to raise additional grounds for relief.")

24

1  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

2  shall be served and filed within seven days after service of the objections.  The parties are

3  advised that failure to file objections within the specified time may waive the right to appeal the

4  District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

5  DATED: April 8, 2010.

6

7

8

DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

9  DAD:8
hardwick672.hc

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

25